**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TARA MOORE,**<br>**Petitioner,**<br>**-against-**<br>**WTA TOUR, INC.,**<br>**Respondent.** | **1:26-cv-01189 (ALC) (VF)**<br>**ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

On February 12, 2026, Petitioner Tara Moore ("Petitioner") brought this action to vacate the November 18, 2025, arbitration award entered in favor of Respondent WTA Tour, Inc. ("Respondent"), pursuant to 9 U.S.C. §§ 10(a)(3)-(4). ECF No. 1. Respondent opposes Petitioner's motion for vacatur and files a cross-motion to confirm the arbitration award. ECF No. 18. For the reasons that follow, Petitioner's motion to vacate is **DENIED** and Respondent's cross-motion to confirm is **GRANTED**. The Arbitration award is **CONFIRMED**.

## BACKGROUND

### I. The Underlying Controversy

Petitioner is a professional tennis player and a citizen of England with permanent residency in Indiana. ECF No. 1 ¶ 3. Respondent is a New York non-profit corporation with its principal place of business in Florida. *Id*. ¶ 4. Respondent operates the global professional women's tennis tour. *Id*. Petitioner was a member of Respondent's organization and participant in Respondent's tournaments, which are governed by the WTA Rulebook. *Id*.

On April 6, 2022, while on a WTA tour in Bogotá, Colombia, Petitioner tested positive for boldenone and nandrolone, substances prohibited by WTA's anti-doping rules. ECF No. 5 at 6. Petitioner contends that the positive test results indicate that she had eaten contaminated local food

because the steroids are commonly associated with Colombian cattle farming. *Id*. Two other players also tested positive for boldenone while on the same tour in Bogotá. *Id*.

Petitioner claims that a year prior to this incident, the world's top-ranked men's doubles player, Robert Farah, had also tested positive for boldenone while on tour in Colombia. *Id*. at 5. The International Tennis Federation ("ITF"), which was at the time responsible for administering anti-doping protocols, publicly cleared Farah after its investigation found that the positive test resulted from consumption of contaminated meat. *Id*. In January 2022, the International Tennis Integrity Agency ("ITIA") — Respondent's delegated anti-doping authority which implements the World Anti-Doping Agency ("WADA") Code — met with Farah to discuss concerns about the dangers posed to players by meat contamination in the region. *Id*. Prior to the February 2022 WTA tournament in Guadalajara, Mexico, Respondent issued an official fact sheet warning players of the dangers posed by local meat. *Id*. at 4. Petitioner argues that Respondent failed to issue similar warnings in advance of the Bogotá tournament, despite Respondent's knowledge of the risks associated with consumption of contaminated meat. *Id*. at 5.

Charging Petitioner with an Anti-Doping Rule Violation ("ADRV"), the ITIA suspended Petitioner from playing in WTA tournaments. *Id*. at 6. Respondent prosecuted Petitioner pursuant to its Tennis Anti-Doping Programme ("TADP"). *Id*.

## II. The Disputed Arbitration

Petitioner's case was first adjudicated by an independent anti-doping tribunal, pursuant to the TADP. *Id*. at 7. On December 22, 2023, after an evidentiary hearing, the tribunal found that Petitioner's positive test results for both boldenone and nandrolone were, on a balance of probabilities, a result of contaminated meat consumption. *Id*. The tribunal determined that

Petitioner had acted without fault or negligence, and Petitioner was permitted to resume playing at tournaments. *Id*.

In January 2024, the ITIA appealed the independent tribunal's determination to the Court of Arbitration for Sport ("CAS"). *Id*. at 8. The CAS panel applied the TADP framework, which Petitioner claims imposes an "impossibly high burden to overcome the presumption of intentional use." *Id*. On July 15, 2025, after conducting an evidentiary hearing, a split CAS panel reversed the anti-doping tribunal's initial determination, finding that Petitioner could not meet her burden to prove the source of nandrolone in her system. ECF No. 1 ¶ 16. The CAS panel further rejected Petitioner's claims that the ITIA or Respondent had a duty to warn Petitioner against eating meat at the tournament. ECF No. 19 at 6. CAS imposed a four-year period of ineligibility, with credit for Petitioner's suspension. *Id*.

Petitioner did not file a challenge to the CAS Award. *Id*. However, on the same day that the ITIA appealed to CAS, Petitioner initiated an arbitration with the American Arbitration Association against Respondent (the "Arbitration"). ECF No. 5 at 8. The dispute resolution provisions of the WTA Rulebook required the Arbitration to be governed by New York law. ECF No. 19 at 6. In her demand for arbitration, Petitioner claimed that Respondent's failure to warn Petitioner against eating meat in Colombia was a direct cause of her positive test result and the harm that followed. *Id.* The Arbitrator granted Respondent's motion to stay the Arbitration pending the resolution of the CAS appeal. *Id*. at 7.

On November 18, 2025, the Arbitrator granted Respondent's motion for summary disposition, finding that Petitioner's claims were collaterally estopped by the CAS ruling. ECF No. 5 at 8. Petitioner claims that the Arbitrator "imported" the unfair TADP framework to arrive at her determination. *Id*. Furthermore, the Arbitrator affirmed CAS's holding that neither the ITIA

nor Respondent had a duty to warn its players of contaminated meat. *Id*. Petitioner argues that this holding contravenes the imposition of a legal duty under American negligence law. *Id*.

On February 12, 2026, Petitioner filed a motion to vacate the Arbitration award pursuant to 9 U.S.C. §§ 10(a)(3)-(4). ECF No. 1. Petitioner argues that, by adhering to the TADP framework and failing to apply New York law to her judgment, the Arbitrator created a proceeding that was fundamentally unfair to Petitioner. ECF No. 1 ¶ 18. Petitioner claims that she was deprived of a fair hearing, justifying vacatur under § 10(a)(3), and that the Arbitrator exceeded her powers and manifestly disregarded the law, justifying vacatur under § 10(a)(4). *Id*. Petitioner requests that this Court grant her motion to vacate the Arbitration award, and requests an award of her costs and reasonable attorneys' fees incurred in this proceeding. *Id*. at 9.

On April 15, 2026, Respondent filed an opposition to Petitioner's motion to vacate the Arbitration award and a cross-motion to confirm the same. ECF No. 18. Petitioner filed her opposition to Respondent's cross-motion on April 27, 2026. ECF No. 21.

## LEGAL STANDARD

### I. Vacatur

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") is incorporated into the law of the United States through Chapter 2 of the Federal Arbitration Act (FAA). 9 U.S.C. § 201. Because the FAA creates a "strong presumption in favor of enforcing arbitration awards," *EB Safe, LLC v. Hurley*, 832 F. App'x 705, 707 (2d Cir. 2020), a party seeking to vacate an arbitration award must meet a high burden of proof, *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 102 (2d Cir. 2013); *see also Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017). The FAA "only allows for vacatur in four circumstances: (1) the arbitral award 'was procured by

corruption, fraud, or undue means;' (2) 'there was evident partiality or corruption in the arbitrators;' (3) 'the arbitrators were guilty of misconduct . . . by which the rights of any party have been prejudiced;' (4) 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *EB Safe, LLC v. Hurley*, 2018 U.S. Dist. LEXIS 82034, *5 (S.D.N.Y. May 15, 2018) (citing 9 U.S.C. § 10(a)).

In addition to the four statutory bases for vacatur, the Second Circuit has held that vacatur may also be granted if "an arbitral award that exhibits a 'manifest disregard of law.' *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (citing *Goldman v. Architectural Iron. Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002)); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002) (same). Review under the manifest disregard standard is "highly deferential" to the arbitrators, and relief on such a claim is therefore "rare." *STMicroelectronics, N. V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)). A court can vacate an arbitral award for manifest disregard of the law only if (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (internal quotations omitted); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "It is well-established that the 'manifest disregard' doctrine is one of 'last resort' and is limited 'only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent.'" *J&J Empire Express, Inc. v. FedEx Ground Package Sys., Inc.*, 2025 U.S. Dist. LEXIS 67676, *5 (S.D.N.Y. April 9, 2025) (citing *Jefferies LLC v. Gegenheimer*, 849 F. App'x 16, 17 (2d

Cir. 2021) (quoting *Duferco*, 333 F.3d at 389)). Given the strong deference to arbitration outcomes, manifest disregard requires a showing beyond "a mistake of law or a clear error in fact finding." *EB Safe, LLC*, 832 F. App'x at 707.

## II. Confirmation

As a general matter, the Second Circuit has recognized "the strong deference appropriately due arbitral awards and the arbitral process." *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 138-39 (2d Cir. 2007). The Second Circuit has held that confirmation under the New York Convention is a "summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). An arbitral award should be enforced if there is "a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Loc. 32B-32J, Servs. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (citing *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)). An action within the New York Convention's scope is "deemed to arise under the laws and treaties of the United States." *Drip Cap., Inc. v. M/S. Goodwill Apparels*, 665 F. Supp. 3d 511, 518 (S.D.N.Y. 2023) (citing 9 U.S.C. § 203). Ordinarily, the court "must grant the award unless the award is vacated, modified, or corrected." *Seneca Nation of Indians v. New York*, 988 F.3d 618 (2d Cir. 2021) (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)).

When looking at whether to confirm an Arbitral Award, Article V of the New York Convention provides the seven defenses which a district court may consider.[1] *See Encyclopaedia*

[1] The seven defenses are listed in Article V of the New York Convention, which states in full:

*Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) ("The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies."); see also 9 U.S.C. § 207 (stating that a "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention"). "[T]he showing required to avoid summary confirmance [of an arbitral award] is high." *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997). The party "opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses applies." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809-10 (2d Cir. 2022).

## DISCUSSION

### I. Petitioner's Motion for Vacatur

---

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

> (a) The parties to the agreement ... were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Petitioner moves to vacate the Arbitration award on two grounds: (1) Petitioner was deprived of a fundamentally fair hearing, warranting vacatur under 9 U.S.C. § 10(a)(3); and (2) the Arbitrator exceeded her powers and exhibited a manifest disregard of the law by adhering to the TADP instead of New York law, justifying vacatur under 9 U.S.C. § 10(a)(4). ECF No. 1. Respondent challenges each of Petitioner's asserted grounds for vacatur. ECF No. 19. For the reasons discussed below, this Court finds that vacatur is not justified on any of the asserted grounds. Accordingly, Petitioner's motion to vacate is **DENIED**.

**a. Petitioner Was Not Deprived of a Fundamentally Fair Hearing Under 9 U.S.C. § 10(a)(3)**

Vacatur under § 10(a)(3) is only permitted "if the misconduct amounts to violation of fundamental fairness." *Lakah v. UBS AG*, No. 07-CV-2799 (LAP), 2024 WL 4555701, at *5 (S.D.N.Y. Oct. 22, 2024) (quoting *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017), *appeal withdrawn*, 2017 WL 8289590 (2d Cir. Dec. 27, 2017)) (internal quotation omitted). "Fundamental fairness is violated when the 'right to be heard has been grossly and totally blocked.'" *Id*. (quoting *Stifel, Nicolaus & Co. v. Forster*, No. 14 CIV. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015)). Arbitrators need only "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id*. (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). That opportunity, however, does not need to "comport with the Federal Rules of Civil Procedure or Federal Rules of Evidence." *Id*. (citing *Tempo*, 120 F.3d at 20). Nor does an arbitrator need to hear all evidence put forth by a party in order to perform a fundamentally fair hearing. *Id*. (citing *Tempo*, 120 F.3d at 20; *Oracle*, 276 F.Supp. 3d at 29; *ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter.*, 2016 WL 5475987, at *4 (S.D.N.Y. June 6, 2016)).

Petitioner argues that she was denied a fundamentally fair hearing for two reasons. First, Petitioner contends that by conditioning its proceedings on the burden of proof imposed by CAS pursuant to the TADP, the Arbitrator imported a "foreign and unfair standard of proof." ECF No. 5 at 10. Second, Petitioner argues that it was fundamentally unfair for the Arbitrator to prevent the presentation of evidence on the issue of Respondent's duty to warn. *Id*. at 11-12.

Based on collateral estoppel, The Arbitrator found that Petitioner is precluded from relitigating issues raised in the CAS proceeding against Respondent. ECF No. 6, Exhibit 1 at 5. Under New York law, "[t]he doctrines of res judicata and collateral estoppel apply to arbitration awards." *Piller v. Princeton Realty Assocs. LLC*, 173 A.D.3d 1298, 1303 (2019) (internal citations omitted). Collateral estoppel may take effect where four conditions are satisfied:

> "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015) (internal citations and quotation marks omitted).

Petitioner does not challenge the relevance of collateral estoppel to her claims. ECF No. 1 ¶ 2. However, Petitioner does argue that by applying collateral estoppel to Petitioner's claims against Respondent, the Arbitrator imported a "guilt-presuming" burden of proof, violating New York law and depriving Petitioner of a fundamentally fair hearing. *Id*. However, Petitioner faced the same burden and standards in both the CAS arbitration and the Arbitration in dispute. In the CAS Appeal, Petitioner was required to prove her defense by a "balance of probabilities." *See* ECF No. 19 at 10; *see also* ECF No. 5 at 7. As Defendant correctly points out, this burden is "functionally identical to the preponderance standard" to which Petitioner was held in her New

York state law claims against Respondent.[2] ECF No. 19 at 10; *see M.D. v. State*, 88 Misc. 3d 663, 670 n.4 (N.Y. Ct. Cl. 2025) (finding that a negligence claim need "only to be proved at trial by a preponderance of the credible evidence"); *see also Sphere Drake Ins. PLC v. J. Shree Corp.,* 2002 U.S. Dist. LEXIS 5327, at *40 (S.D.N.Y. Mar. 28, 2022) (concluding that "[t]he United Kingdom standard of 'balance of probabilities' appeared to be identical with the familiar civil standard of a preponderance of the evidence") (citing *Cooper v. Okla.*, 517 U.S. 348, 358 (1996))

Both burdens of proof require the moving party to prove their claim was more likely true than not true. CAS began with a presumption that Petitioner intentionally ingested the prohibited substances, requiring her to prove by a balance of probabilities that the source of her nandrolone in her system was from eating contaminated meat. *See* ECF No. 19 at 11. For Petitioner's state law claims raised in Arbitration, Petitioner had to establish for both her negligence and contract claims that WTA's duty to warn her about the risk of eating meat in Colombia was a cause of her alleged harm which required in turn that she prove it was more likely than not that her positive test resulted from consuming contaminated meat. As the movant in both the CAS proceeding and in the Arbitration in dispute, Petitioner had the burden of proving the identical issue—that her positive nandrolone test was *more likely than not* the result of consumption of contaminated meat. In addition, in both proceedings, Petitioner needed to prove by a preponderance of the evidence that Respondent was *more likely than not* to have had a duty to warn Petitioner of such danger, and its failure was *more likely than not* the cause of her injury. The CAS panel found that Petitioner failed

[2] To establish negligence, Moore would have been required to prove each element of her claim: duty, breach of duty, causation, and injury. See Begandy v. Richardson, 134 Misc. 2d 357, 359 (Sup. Ct. Monroe Cnty. 1987) (citing 1B Warren's Negligence, Proof of Negligence § 9:201). Under New York law, the elements of a claim for breach of the duty of good faith and fair dealing are "practically identical to the elements of a negligence claim," and likewise would have required Moore to show that WTA owed her a duty to act in good faith and conduct fair dealing, breached that duty, and that breach of duty proximately caused her damages. See Washington v. Kellwood Co., 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009); see also Wilder v. World of Boxing LLC, 310 F. Supp. 3d 426, 448 (S.D.N.Y. 2018), aff'd, 777 F. App'x 531 (2d Cir. 2019).

to meet her burden with regard to all of these issues and, as a consequence, found in favor of Respondent. Therefore, even if the Arbitrator adjudicated these issues on the merits, the same burden of proof as was applied in the CAS proceedings would have applied in the Arbitration. Accordingly, Petitioner's first argument that the Arbitrator's ruling on issue preclusion deprived Petitioner of a fundamentally fair hearing fails.

Petitioner's second argument also fails. The Arbitrator applied New York law to determine that collateral estoppel barred Petitioner from relitigating identical issues against Respondent. Requiring that the Arbitrator review all evidence submitted would contravene the fundamental utility of the collateral estoppel doctrine and would constitute an adjudication on the merits. Moreover, as the Arbitrator was in no event required to review all evidence submitted in order to perform a fundamentally fair hearing, Petitioner's claim that the Arbitrator exhibited misconduct amounting to a violation of fundamental fairness is unavailing.

For the reasons discussed above, the Court finds that the Arbitrator did not violate principles of fundamental fairness, and vacatur is not justified on such basis.

**b. The Arbitrator Did Not Exceed Her Powers or Manifestly Disregard the Law Under 9 U.S.C. § 10(a)(4)**

"The Second Circuit has 'consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4).'" *Caremark, L.L.C. v. New York Cancer & Blood Specialists*, 740 F. Supp. 3d 340, 352 (S.D.N.Y. 2024) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010)). "When deciding whether an arbitrator exceeded his powers, the inquiry 'focuses on whether the arbitrators had the power, based on the parties' submissions or on the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" *Id*. (quoting *Banco de Seguros del Estado v.*

*Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)). An arbitrator exceeds the scope of its authority when it "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Id*.

Here, the Arbitrator interpreted and applied the WTA Rulebook, including Section XIX on Final Dispute Resolution. ECF No. 6, Exhibits 1, 3. Section XIX requires any dispute that is not finally resolved by applicable provisions of the WTA Rulebook to be submitted to the American Arbitration Association ("AAA") for final and binding arbitration in accordance with the Expedited Procedures of the AAA's Commercial Arbitration Rules. ECF No. 6, Exhibit 3 at 421. Section XIX further provides that all arbitrations brought under the section "shall be governed by the laws of the State of New York without reference to New York conflict of laws principles." *Id*. Pursuant to the underlying agreement, the Arbitrator applied New York law to determine that Petitioner was precluded from relitigating identical issues against Respondent. ECF No. 6, Exhibit 1. Indeed, the Arbitrator was bound by the underlying contractual agreement between Petitioner and Respondent, and it faithfully interpreted and applied the agreement's terms under the relevant governing law. The Arbitrator provided reasonable, law-consistent bases for its decision, and it did not exceed the scope of its authority justifying vacatur under § 10(a)(4).

For the same reasons, Petitioner fails to establish that the Arbitrator manifestly disregarded the law, warranting vacatur under § 10(a)(4). Accordingly, Petitioner's motion to vacate the Arbitration award is denied.

## II. Respondent's Cross-Motion for Confirmation

Petitioner has not met her "heavy burden" to defeat Respondent's cross-motion to confirm the Arbitration award for the same reasons that vacatur is denied. *See R.W. Chelsea Energie LTD. v. Vision Indian Ocean (V.I.O.) SA*, 815 F. Supp. 3d 264 (S.D.N.Y. 2025) (citing *Wells Fargo*

*Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)). Because a motion to vacate and a motion to confirm an arbitration award are parallel in nature, "denying the former implies granting the latter." *Id.* (citing *Shenzhen Lanteng Cyber Tech. Co. v. Amazon.com Servs., LLC*, No. 23 Civ. 991, 2023 WL 6276691 (S.D.N.Y. Sep. 26, 2023), *aff'd*, No. 23-7593, 2024 WL 4356307 (2d Cir. Oct. 1, 2024) (summary order)) (internal quotation marks omitted). For these reasons, Respondent's motion to confirm the Arbitration award is **GRANTED**, and the Arbitration award is **CONFIRMED**.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the arbitration award is **DENIED**. Respondent's cross-motion to confirm the award is **GRANTED**. The arbitration award is **CONFIRMED**. The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 4 and 18 and close this matter.

**SO ORDERED.**

**Dated:** **September 18, 2026**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**